# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SLOAN L. SHOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-281-JHP-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Sloan L. Shock (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 17, 1964 and was 49 years old at the time of the ALJ's decision. Claimant received her associates degree. Claimant has worked in the past as a security gate keeper, sales representative for petroleum products, bartender, waitress, administrative assistant, and instrument technician. Claimant alleges an inability to work beginning May 12, 2011 due to

3

limitations resulting from chronic fatigue, joint pain, poor concentration, lupus, depression, and fibromyalgia.

## Procedural History

On January 13, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On May 7, 2012, Claimant filed for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 12, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Bernard Porter by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. The ALJ entered an unfavorable decision on December 12, 2013. The Appeals Council denied review on July 8, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly determine her RFC; (2) failing to conduct a proper credibility determination; and (3) reaching erroneous findings at step five.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of lupus, fibromyalgia, chronic obstructive pulmonary disease ("COPD"), asthma, and major depression. (Tr. 21). The ALJ concluded that Claimant retained the RFC to perform light work except that she required a sit/stand option in which she could alternate positions at least every thirty minutes. Claimant could never crawl or climb ladders, ropes or scaffolds, and could only occasionally climb ramps and stairs. She must avoid working around unprotected heights, moving mechanical parts, and temperature extremes, and she must avoid concentrated exposure to humidity, wetness, dust, fumes, and gases. The ALJ determined that because of the combined effects of her physical and mental impairments, Claimant will be off task five percent of the workday and will miss one day of work per month. (Tr. 24). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of receptionist, general clerk, ticket seller, and information clerk,

all of which he found to exist in sufficient numbers both regionally and nationally. (Tr. 31). As a result, the ALJ found Claimant was not disabled. (Tr. 31-32).

Claimant first contends the ALJ failed to properly account for her assertions of fatigue associated with her fibromyalgia in his RFC analysis. Soc. Sec. R. 12-2p sets forth the analyzing procedure and evidence to be considered in determining whether a claimant's symptoms warrant a finding of impairment. Specifically, this Ruling states as its purpose to "provide[] guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." Soc. Sec. R. 12-2p. The ALJ properly concluded that Claimant's fibromyalgia constituted a severe impairment at step two and, in so doing, applied the criteria for consideration of the condition set forth in Soc. Sec. R. 12-2p.

Claimant directs the Court to her report of "overwhelming fatigue" in April of 2010 when appearing for a consultation with Dr. Fareed Kannout, a rheumatologist. (Tr. 76). Claimant's testimony, however, supports the ALJ's accommodation of this limitation in the RFC by requiring alternating sitting and standing

every thirty minutes and time off task. (Tr. 104-05).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96–8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's evaluation and consideration of Claimant's fatigue is supported by substantial evidence.

Claimant next asserts the ALJ failed to fully develop the record in not obtaining a medical source statement from Dr. Jimmie

Taylor, a consultative examining physician. Certainly, the regulations generally require that the adjudicators request medical source statements from acceptable medical sources with their reports. Soc. Sec. R. 96-5p. However, nothing in the regulations require the reversal and remand of a case because such statements were not obtained. Indeed, the regulations expressly state that "the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. § 416.919n(c)(6); *see also* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6); Branam v. Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004). Therefore, the failure of the ALJ to obtain a statement from Dr. Taylor does not constitute reversible error.

In her continuing litany of issues, Claimant contends the ALJ's RFC findings failed to accurately reflect her mental limitations. On March 22, 2012, Claimant underwent a mental status examination by Dr. Diane Brandmiller. Dr. Brandmiller concluded Claimant suffered from major depressive disorder, single episode, moderate. (Tr. 353). She found Claimant's concentration was mildly impaired and that her performance on testing improved with a simple as opposed to complex task. Claimant also appeared to understand and carry out simple instructions. Id.

The ALJ gave Dr. Brandmiller's opinion "great weight . . . as

it is consistent with the claimant's demonstration of difficulty with more complex tasks . . . ." (Tr. 28). The ALJ also gave "great weight" to the opinions of Dr. Dan Cox and Dr. Burnard Pearce. Dr. Cox completed a Psychiatric Review Technique form and mental RFC assessment on April 6, 2012. Dr. Cox found Claimant had moderate limitations in the functional areas of the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 382-83). He also noted difficulties in maintaining social functioning on the PRT. (Tr. 396). In the narrative section of the assessment, Dr. Cox found Claimant could perform simple and detailed tasks, could relate to others on a superficial work basis, and could adapt to a work situation. (Tr. 384). Dr. Pearce affirmed Dr. Cox's findings. (Tr. 401).

While the ALJ's RFC findings include a reference to mental limitations which would cause Claimant to be off task, no restriction is addressed with regard to the level of simplicity of the tasks Claimant can perform due to her severe mental impairment. All of the evaluating mental health professionals found such a limitation and, while the ALJ gave these opinions "great weight", he did not address this consistent limitation. The ALJ shall address these limitations in his RFC findings on remand.

9

**Evaluation of Claimant's Credibility**

Claimant also contends the ALJ failed to properly evaluate her credibility, "scoffing" at her need for rest and her extreme fatigue. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional

limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

As this Court stated, the ALJ's RFC findings adequately addressed Claimant's level of fatigue. The ALJ's credibility findings are supported by his citation to the objective medical evidence.

### Step Five Evaluation

Claimant contends the ALJ's hypothetical questioning of the vocational expert did not include all of her functional limitations. Because this Court has determined the ALJ's RFC findings did not adequately address Claimant's limitations to simple tasks, his questioning is flawed because it did not include this limitation. On remand, the ALJ shall include the totality of the functional limitations which he finds in his RFC assessment.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 18th day of July, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE